IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 16-01697 |
| Garvey Court Holdings, LLC, | ) | Chapter 7 |
| | ) | Judge Jacqueline P. Cox |
| Debtor. | ) | |

**FINAL ORDER PURSUANT TO SECTIONS 105, 361, 362, 363, 364 AND 721 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001 AND 9014: (1)
AUTHORIZING THE TRUSTEE TO OPERATE THE BUSINESS UNDER SECTION
721 OF THE BANKRUPTCY CODE; (2) AUTHORIZING THE TRUSTEE'S USE OF
CASH COLLATERAL; (3) AUTHORIZING POST-PETITION FINANCING, (4) GRANTING
POST-PETITION LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
<u>EXPENSE PRIORITY; AND (5) MODIFYING THE AUTOMATIC STAY</u>**

Upon the motion (the "*Motion*"),[1] dated March 25, 2016 [D.R. No. 104], of Gregg Szilagyi, duly appointed trustee (the "*Trustee*") of the estate of Garvey Court Holdings, LLC (the "*Debtor*"), pursuant to sections 105, 361, 362, 363, 364 and 721 of Title 11, United States Code (the "*Bankruptcy Code*") and in accordance with Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") and Rule 4001-2 of the Local Bankruptcy Rules for the Northern District of Illinois (the "*Local Rules*"), in the above captioned chapter 7 case, for entry of interim and final orders, granting the following relief on an interim and final basis:

  a)  authorizing the Trustee to operate the Debtor's business, including, without limitation, the Property (defined below), in accordance with the terms and provisions of the Financing Orders and the Budget (each as defined below);

  b)  authorizing the Trustee's use of cash collateral of LCP North Clark LLC ("*LCP North Clark*"), subject to the terms and provisions of the Financing Orders and the Budget;

  c)  approving the Trustee's consummation of a proposed post-petition loan facility (the "*Post-Petition Loan Facility*") with LCP Chicago DIP, LLC, as post-petition lender (the "*Lender*"), consistent with the terms and provisions set forth in that certain (i) *Summary of Terms and Conditions For Proposed $500,000 Senior Secured Superpriority Post-Petition Credit Facility*, dated March 21, 2016 ("*Term Sheet*"), and (ii) *Post-Petition Credit Agreement*, dated as

---

[1]   Capitalized terms used in this Final Order, but not defined herein, shall have the meanings ascribed to such terms in the Post-Petition Credit Agreement (defined below) or in the Motion, as the context makes applicable.

of March 29, 2016 ("***Post-Petition Credit Agreement***"), pursuant to which the Lender would provide a post-petition term loan credit facility of up to $500,000.00;

      d) authorizing the Trustee to execute the Post-Petition Credit Agreement and all other agreements, documents, certificates, and instruments executed and/or delivered with, to, or in favor of the Lender, each as amended and in effect from time to time (collectively with the Post-Petition Credit Agreement, the "***Post-Petition Loan Documents***"), and to perform such other acts as may be necessary or desirable in connection therewith;

      e) granting the Lender valid, automatically perfected, and enforceable first priority priming liens upon substantially all of the Debtor's assets to the extent set forth in the Post-Petition Credit Agreement (the "***Post-Petition Liens***") to secure the obligations owing under the Post-Petition Credit Agreement;

      f) granting the Lender allowed superpriority administrative expense claims for all obligations owing to the Lender under the Post-Petition Credit Agreement, subject to the Carveout (as defined herein);

      g) granting the Trustee authority to pay the principal, interest, fees, expenses, and other amounts payable under the Post-Petition Loan Documents as such become due, including, the reasonable and documented fees and disbursements of the Lender's attorneys, advisers, accountants, and other consultants, all to the extent provided in and in accordance with the terms of the Post-Petition Loan Documents;

      h) approving the Milestones, as defined in the Motion;

      i) waiving any applicable stays under the Bankruptcy Rules, including, without limitation, under Bankruptcy Rule 6004(h), and provide for the immediate effectiveness of this Final Order; and

      j) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Post-Petition Loan Documents and this Final Order;

and the Court having reviewed the Motion and the Declaration of Gregg Szilagyi, as chapter 7 trustee herein, in support of the Motion [D.R. No. 109] (the "***Trustee's Declaration***"), filed in support of the Motion; and the Court having held an interim hearing with respect to the Motion on March 31, 2016 (the "***Interim Hearing***"); and the Court having entered its "*Interim Order Pursuant to Sections 105, 361, 362, 363, 364 and 721 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014: (1) Authorizing the Trustee to Operate the Business Under Section 721 of the Bankruptcy Code; (2) Authorizing the Trustee's Use of Cash Collateral; (3) Authorizing Post-Petition Financing, (4) Granting Post-Petition Liens and Providing Superpriority Administrative Expense Priority; (5) Modifying the Automatic Stay;*

2

*and (6) Scheduling a Final Hearing"*, dated March 31, 2016 [D.R. No. 122] (the "***Interim Order***"; and together with this Final Order the "***Financing Orders***"), providing for approval of the Motion on an interim basis; and notice of the final hearing on the Motion having been given in accordance with Bankruptcy Rules 4001(b), (c), and (d), and 9014 and as provided in the Interim Order; and the Final Hearing having been held and concluded on April 27, 2016 (the "***Final Hearing***"); and the Court having considered the Motion, the Trustee's Declaration, the Term Sheet and the Post-Petition Credit Agreement, the evidence submitted or proffered at the Interim Hearing and the Final Hearing; and all objections to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and based on all pleadings filed with this Court, and all proceedings held before the Court; and it appearing to the Court that granting the relief requested in the Motion on a final basis, to the extent and on the terms provided herein, is fair and reasonable and in the best interests of the Debtor, its estate, and its creditors, and is essential for the continued operation of the Debtor's businesses and preservation of the value of property of the estate; and it further appearing that the Trustee is unable to obtain unsecured credit for money borrowed allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code; and after due deliberation and consideration, and for good and sufficient cause appearing therefor::

BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING BY THE TRUSTEE, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

### III. <u>Procedural Findings of Fact</u>

A. **Petition Date.** On or about January 20, 2016 (the "***Petition Date***"), an involuntary petition was filed with the Clerk of the Court. On February 17, 2016, this Court entered an order for relief in the Debtor's Chapter 7 case. On or about that date, the Trustee was appointed and duly qualified to administer the assets of this estate.

B. **Jurisdiction and Venue.** This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the Motion constitutes a "core" proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  **Notice.** The Final Hearing is being held pursuant to the authorization of Bankruptcy Rule 2002, 4001(b), (c), and (d) and Rule 9014, and the Local Rules. Notice of the Final Hearing and the relief requested in the Motion on a final basis has been provided by the Trustee to certain parties in interest, including: (i) the United States Trustee; (ii) counsel to the Lender; (c) each person or entity known to the Trustee to assert a lien against the Property; (d) those parties on the Trustee's special notice list; and (e) each of the Debtor's creditors as listed in the schedule of assets and liabilities; and (f) any party that has filed a notice of appearance and request for notices herein.

### IV.  Findings Regarding the Trustee's Request for Authorization to Continue to Operate and Use Cash Collateral

D.  The continued operation of the Debtor's business on a limited basis, and for a limited period of time, is in the best interests of the Debtor's estate and is consistent with the orderly liquidation of the estate. Affording the Trustee to authority to continue such operations will maximize the value of the Debtor's assets for all interested stakeholders, and is otherwise fair and equitable under the circumstances.

E.  In the Motion, the Trustee has asserted that he does not have sufficient available sources of working capital and financing to carry on the normal course operation of the business without use of LCP North Clark's cash collateral. In addition, the Trustee has argued that the need for use of cash collateral is critical and immediate. In the absence of the use of LCP North Clark's cash collateral, in combination with access to the Post-Petition Loan Facility, the continued operation of the Debtor's business and achieving a successful outcome for all stakeholders will not be possible, and serious and irreparable harm to the Debtor and its estate would occur. As set forth in the Motion, LCP North Clark consents to the Trustee's use of its cash collateral in accordance with the terms of this Final Order and the Budget.

### V.  Findings Regarding the Post-Petition Financing.

F.  **Need for Post-Petition Financing.** In addition to the continued use of LCP North Clark's cash collateral as provided above, an immediate need exists for the Trustee to obtain additional

funds under the Post-Petition Loan Facility in order to continue operations and to administer and preserve the value of the estate and its assets. The ability of the Trustee to finance operations, to preserve and maintain the value of the Debtor's assets, and to maximize a return for all creditors requires the availability of working capital from the Post-Petition Loan Facility, the absence of which would immediately and irreparably harm the Debtor's estate and creditors.

      G.    **No Credit Available on More Favorable Terms**. The Trustee has been unable to obtain any of the following:

      (1)    unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense,

      (2)    credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code,

      (3)    credit for money borrowed secured solely by a lien on property of the estate that is not otherwise subject to a lien, or

      (4)    credit for money borrowed secured by a junior lien on property of the estate which is subject to a lien, in each case, on more favorable terms and conditions than those provided in the Post-Petition Loan Documents, the Interim Order and this Final Order.

      H.    **Adequacy of the Budget.** The Budget, attached hereto as <u>Exhibit A</u>, is adequate, considering all the available assets, to pay the administrative expenses due and accruing during the period covered by this Final Order. During the period within which the Trustee is authorized to operate the Debtor's business, the Budget may be amended by agreement of the Trustee and the Lender, so long as it conforms to the terms the Post-Petition Loan Facility and the orders of this Court approving the Motion.

      I.    **Section 552 of the Bankruptcy Code.** In light of its agreement to subordinate its liens and superpriority claims (1) only to the Carveout, in the case of Lender, the Lender is entitled to: (a) a waiver of the provisions of section 506(c) of the Bankruptcy Code, and (b) all rights and benefits of section 552(b) of the Bankruptcy Code, and the Trustee shall not assert that the "equities of the case" exception shall apply.

      J.    **Business Judgment and Good Faith Pursuant to Section 364(e) of the Bankruptcy Code.** The terms and conditions of Trustee's use of LCP North Clark's cash collateral and the Post-

Petition Loan Facility and the Post-Petition Loan Documents: (i) are fair, reasonable, and the best available under the circumstances, (ii) reflect the Trustee's exercise of prudent business judgment consistent with his fiduciary duties, and (iii) are supported by reasonably equivalent value and consideration. The terms under which the Trustee proposes to use LCP North Clark's cash collateral and the terms of the Post-Petition Loan Facility were each negotiated in good faith and at arms' length between the Trustee, LCP North Clark and the Lender, and the use of the proceeds to be extended under the Post-Petition Loan Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which both LCP North Clark and the Lender are entitled to the protections and benefits of section 364(e) of the Bankruptcy Code.

K.     **Relief Essential; Best Interest.** The relief requested in the Motion (and as provided in this Final Order) is necessary, essential, and appropriate for the continued operation of the Debtor's business by the Trustee and the management and preservation of the Debtor's assets. It is in the best interest of Debtor's estate that the Trustee be allowed to (i) use LCP North Clark's cash collateral according to the Budget and (ii) establish the Post-Petition Loan Facility contemplated by the Post-Petition Loan Documents. The Trustee has demonstrated good and sufficient cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

1.     The Motion is granted in accordance with the terms and conditions set forth in this Final Order and the Post-Petition Loan Documents.

### I.     AUTHORIZATION TO CONTINUE OPERATIONS AND USE CASH COLLATERAL

2.     Pursuant to section 721 of the Bankruptcy Code, the Trustee is hereby authorized to operate the Debtor's business on through and including September 1, 2016, which authorization is without prejudice to the Trustee's right to request additional time to the extent that it may become appropriate to do so.

3.     The Trustee is authorized to continue its use LCP North Clark's cash collateral in

accordance with the Budget. The Trustee shall not knowingly or intentionally incur any administrative expenses other than as set forth in the Budget, without the prior written consent of LCP North Clark or approval by the Court after notice to LCP North Clark and a hearing.

## II.     APPROVAL OF POST-PETITION FINANCING

### A.     Approval of Entry into the Post-Petition Loan Documents

4.     The Trustee is authorized to execute and deliver the Post-Petition Loan Documents and to incur and to perform the post-petition obligations thereunder in accordance with, and subject to, the terms of this Final Order and the Post-Petition Loan Documents, and to execute and deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Trustee under the Post-Petition Loan Facility and the creation and perfection of the post-petition liens described in and provided for by this Final Order and the Post-Petition Loan Documents.

5.     The Trustee is hereby authorized to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the Post-Petition Loan Documents as such become due, including, without limitation, reasonable attorneys', financial advisors' and accountants' fees, and disbursements as provided for in the Post-Petition Loan Documents, which amounts shall not otherwise be subject to approval of this Court, provided, however, the Trustee is only authorized to pay such amounts described in the Post-Petition Loan Documents to the extent provided for in the Budget. Upon execution and delivery, the Post-Petition Loan Documents shall represent valid and binding obligations of the Trustee enforceable against the Trustee in accordance with their terms.

### B.     Authorization to Borrow

6.     In order to enable it to continue to operate the business during the period following the entry of this Final Order and continuing through and including September 1, 2016 (the "*Final Period*"), and subject to the terms and conditions of this Final Order, the Post-Petition Loan Documents, and the Budget (subject to any variances thereto permitted thereunder), the Trustee is hereby authorized to borrow up to a total committed amount of $500,000.00 in accordance with the terms and conditions of the Post-Petition Loan Documents and the Budget.

### C. Post-Petition Liens

7. Further to the relief granted under the Interim Order, the Lender is granted pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, priming first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests and liens (collectively, the "***Post-Petition Liens***") senior and superior in priority to all other secured and unsecured creditors of the Debtor's estate except as otherwise provided in this Final Order, upon and to all of the "***Collateral***" (as such term is defined in the Post-Petition Credit Agreement).

8. The Post-Petition Liens shall secure all obligations and the proceeds of the Collateral shall be applied in the same order and priority set forth in the Post-Petition Loan Documents. The Post-Petition Liens shall not be made subject to or *pari passu* with any Lien or security interest by any court order heretofore or hereafter entered in the Debtor's Chapter 7 case and shall be valid and enforceable upon the dismissal of thereof. The Post-Petition Liens shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code or the assertion by the Trustee of the "equities of the case" exception of section 552 of the Bankruptcy Code, and shall not be subject to section 506(c) of the Bankruptcy Code.

### D. Protection of the Lender and Other Rights

9. From and after the Petition Date, the Trustee shall use the proceeds of the extensions of credit under the Post-Petition Loan Facility only for the purposes specifically set forth in the Post-Petition Loan Documents and this Final Order, and in compliance with the Budget (subject to any permitted variances).

### E. Superpriority Administrative Claim Status

10. Subject to the Carveout, all Post-Petition Obligations shall be an allowed superpriority administrative expense claim (the "***Lender Superpriority Claim***") with priority under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtor's estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552(b), and 726

of the Bankruptcy Code. Other than the Carveout, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred, and no priority claims are, or will be, senior to, prior to, or on a parity with the Post-Petition Obligations and/or the Lender Superpriority Claim, or with any other claims of the Lender arising hereunder.

### III. POST-PETITION LIEN PERFECTION

11. This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Post-Petition Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, security agreement, notice of lien, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreement) to validate or perfect the Post-Petition Liens or to entitle the Post-Petition Liens to the priorities granted herein.

12. Notwithstanding the foregoing, the Lender may, in its discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens, and other similar instruments and documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices of liens, and other similar instruments and documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Final Order. The Trustee shall execute and deliver to the Lender all such financing statements, deeds of trust, mortgages, security agreements, notices of liens, and other similar instruments and documents as the Lender may reasonably request to evidence, confirm, validate, or perfect, or to ensure the contemplated priority of, the Post-Petition Liens granted pursuant hereto. The Lender, in its discretion, may file a photocopy of this Final Order as a financing statement with any recording office designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the subject filing or recording office shall be authorized to file or record such copy of this Final Order.

## IV. CARVEOUT AND PAYMENT OF PROFESSIONALS

13. To the extent that the Trustee fails to satisfy all amounts due under the Post-Petition Loan Facility on or before the Maturity Date, the Trustee shall file with the Court a motion to sell the Property (as defined in the Term Sheet) under, inter alia, section 363 of the Bankruptcy Code by public auction (the "*Sale Motion*"). The Sale Motion shall designate LCP North Clark as the "stalking horse" purchaser of the Property, subject to higher and/or better offers, in an amount determined by LCP North Clark, in its sole discretion, not to exceed the full amount due under its allowed or unobjected to claim against the Debtor's estate. The Sale Motion shall further request that such sale will be free and clear of all liens, claims and encumbrances, except with respect to the liens and allowed or unobjected to claims of the Lender. The Trustee shall file the Sale Motion to sell within fourteen (14) days after the Maturity Date. Nothing herein is intended to, nor shall, affect any and all rights of parties in interest to object to the Sale Motion.

14. In the event that the result of the Sale Motion is that LCP North Clark's credit bid is found to be the highest and best bid for the Property, then solely to the extent that the funds in the Debtor's estate are insufficient to do so, LCP North Clark shall pay in cash an amount sufficient to pay the following items, and the Post-Petition Liens and Lender Superpriority Claim are subordinate only to the following (collectively, the "*Carveout*"):

    a. all statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) plus interest, if any, pursuant to 31 U.S.C. § 3717;

    b. all actually accrued and unpaid expenditures for reasonable fees, disbursements, costs and expenses incurred by counsel the Trustee through the date of the closing of the Sale of the Property, to the extent such fees, disbursements, costs and expenses are allowed at any time by final order of the Bankruptcy Court upon application therefor;

    c. any commission due to any broker employed by the Trustee in connection with the sale of the Property, to the extent allowed at any time by final order of the Bankruptcy Court; and

    d. all actually accrued and unpaid statutory commissions earned by and awarded to the Trustee through the date of the closing of the sale of the Property, to the extent allowed at any time by final order of the Bankruptcy Court.

15. Nothing herein shall be construed as consent by the Lender or any party in interest to the

allowance of any professional fees (including broker commissions) and Trustee commissions, nor shall it affect the right of the Lender or any party in interest to object to the allowance and payment of such fees, expenses and commissions.

## V. EVENTS OF DEFAULT / REMEDIES

### A. Rights and Remedies Upon Event of Default

16. Any automatic stay otherwise applicable to the Lender is hereby modified so that (i) after the occurrence of any Event of Default under the Post-Petition Loan Documents, the Lender may accelerate the Post-Petition Obligations without further order of the Court, and (ii)(A) after the occurrence of any Event of Default or (B) at any time thereafter during the continuance of such Event of Default, upon five (5) days' prior written notice delivered by e-mail of such occurrence, in each case given to each of (i) counsel to the Trustee and (ii) the Office of the United States Trustee and all parties who have filed a notice of appearance in the bankruptcy case (collectively, the "Notice Parties"), the Lender shall be entitled to exercise its rights and remedies in accordance with the Post-Petition Loan Documents.

17. Following the giving of written notice by the Lender of the occurrence of an Event of Default, the Trustee shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether an Event of Default has occurred. If the Trustee does not contest the occurrence of an Event of Default and therefore the right of the Lender to exercise its remedies, or if the Trustee does timely contest the occurrence of an Event of Default and the Court after notice and hearing declines to stay the enforcement thereof, the automatic stay as to the Lender shall automatically terminate at the end of such five (5) day notice period. Nothing in this paragraph shall prevent the Notice Parties from contesting the occurrence of an Event of Default. Furthermore, the Notice Parties reserve their rights to object to future expenditures by the Trustee pursuant to any amendment(s) to the Budget as may be approved by the Lender after the entry of this Final Order. In this regard, the Notice Parties will be provided with seven (7) days' advance notice via e-mail of (a) any proposed change in the Budget that will alter the aggregate expenditures by more than 10% in any given month (excluding instances in which expenses included within the budget are paid either earlier or later than projected) or (b) any proposed

11

extension of the Budget beyond December 31, 2016. Except as expressly provided in this Final Order and the Post-Petition Loan Documents, nothing contained in this Final Order or any documents executed in furtherance of the Final Order, including, but not limited to the Post-Petition Loan Documents, shall affect or be construed to affect any right, title or interest that any party in interest, including 77 West Wacker Drive, LLC, has or may have in or in connection with the Property.

**B.    No Waiver of Remedies**

18.    The delay in or the failure of the Lender to seek relief or otherwise exercise its rights and remedies shall not constitute a waiver of any of the Lender's rights and remedies. Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights and remedies of the Lender under the Bankruptcy Code or under non-bankruptcy law.

## VI.    CERTAIN LIMITING PROVISIONS

**A.    Section 506(c) Claims and Waiver**

19.    No costs or expenses of administration which have been or may be incurred in this chapter 7 case at any time shall be charged against the Lender or any of its claims, or the Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the Lender.

**B.    Proceeds of Subsequent Financing**

20.    If, at any time prior to the irrevocable repayment in full of all Post-Petition Obligations and the termination of the Lender's obligations to make loans and advances under the Post-Petition Loan Facility, the Trustee shall obtain credit or incur debt pursuant to sections 364(c)(1) or 364(d) of the Bankruptcy Code, then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the Lender and applied in reduction and repayment of the Post-Petition Obligations until such obligations shall have been paid in full.

C. **Prohibited Orders**

21.     Unless the Lender has provided its prior written consent or all Post-Petition Obligations have been irrevocably paid in full in cash (or will be irrevocably paid in full in cash upon entry of an order approving indebtedness described herein, or other arrangements for the payment of the Post-Petition Obligations satisfactory to the Lender have been made), it shall be an Event of Default under the Post-Petition Facility if any interested party seeks and obtains an order that authorizes any of the following:

(a)     Any modification, stay, vacation or amendment to this Final Order to which the Lender has not consented;

(b)     A priority claim or administrative expense or unsecured claim against the Debtor's estate (now existing or hereafter arising or any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 105, 364(c), 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), or 726 of the Bankruptcy Code) equal or superior to the priority claim of the Lender in respect of the Post-Petition Obligations, except with respect to the Carveout; or

(c)     Any Lien on any Collateral having a priority equal or superior to the Lien securing the Post-Petition Obligations, except with respect to the Carveout.

## VII.     OTHER RIGHTS AND OBLIGATIONS

A. **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order**

22.     Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified, amended, or vacated by a subsequent order of this or any other court, both LCP North Clark and the Lender are entitled to the protections provided in section 364(e) of the Bankruptcy Code and, no such appeal, modification, amendment, or vacation shall affect the validity and enforceability of any use of cash collateral and/or advances made under the Post-Petition Loan Dcouments or the Post-Petition Liens or priority authorized or created hereby.

23.     Notwithstanding any such modification, amendment, or vacation, any claim granted to the Lender hereunder arising prior to the effective date of such modification, amendment, or vacation of any protections granted to LCP North Clark and the Lender shall be governed in all respects by the original provisions of this Final Order, and LCP North Clark and the Lender shall be entitled to all of the

rights, remedies, privileges, and benefits granted herein, with respect to any such claim. Since the loans made pursuant to the Post-Petition Loan Facility are made in reliance on this Final Order, the obligations owed the Lender prior to the effective date of any stay, modification, or vacation of this Final Order shall not, as a result of any subsequent order in this case, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the Lender under this Final Order and/or the Post-Petition Loan Documents.

**B.    Binding Effect**

24.    The provisions of this Final Order shall be binding upon and inure to the benefit of the LCP North Clark, Lender, the Trustee, and their respective successors and assigns.

**C.    No Third Party Rights**

25.    Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

**D.    No Marshaling**

26.    The Lender shall be not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral.

**E.    Section 552(b) of the Bankruptcy Code**

27.    Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the Trustee shall not assert that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall apply to the Lender with respect to proceeds, product, offspring or profits of any of the Collateral.

**F.    Limitation of Liability**

28.    In determining to make extensions of credit under the Post-Petition Loan Facility, permitting the use of Cash Collateral, or in exercising any rights or remedies as and when permitted pursuant to the Interim Order and/or this Final Order, or the Post-Petition Loan Documents, as applicable, neither the Lender nor any successor thereof shall be deemed to be in control of the operations of the Debtor, or to be acting as a "responsible person" or "owner or operator" with respect to the operation or

management of the Debtor or any of its properties (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute). Furthermore, nothing in the Interim Order, this Final Order, or the Post-Petition Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the Lender or any successor thereof of any liability for any claims arising from the pre-petition or post-petition activities of the Debtor or the Trustee.

### G.   Credit Bidding

29.   Subject to the terms of the Post- Petition Credit Agreement, LCP North Clark shall have the unqualified right to credit bid up to the full amount of the allowed or unobjected to LCP North Clark pre-petition claim in any sale of the Collateral (or any part thereof), without the need for further Court order authorizing the same, and whether such sale is effectuated through sections 363 or 725 of the Bankruptcy Code, or otherwise. Nothing herein is intended to, nor shall, affect any and all rights of parties in interest to object to any such proposed sale of the Collateral (or any part thereof).

### H.   Amendments

30.   The Trustee and the Lender may amend, modify, supplement, or waive any provision of the Post-Petition Loan Documents to make non-material changes to such agreements without further approval of the Court. Except as set forth above, all waivers, modifications, or amendments of any of the provisions hereof shall not be effective unless set forth in writing, signed by on behalf of the Trustee and the Lender and approved by the Court.

### I.   Inconsistency

31.   In the event of any inconsistency between the terms and conditions of the Post-Petition Loan Documents and this Final Order, the provisions of this Final Order shall govern and control.

### J.   Enforceability

32.   This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon execution hereof.

### K. Objections Overruled

33. All objections to the Motion to the extent not withdrawn or resolved, are hereby overruled.

### L. Waiver of Any Applicable Stay

34. Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Final Order.

### M. Headings

35. The headings in this Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Order.

### N. Service of Final Order

36. On or before May [__], 2016, the Trustee shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Order, together with copies of this Order, on (a) the parties having been given notice of the Final Hearing, (b) any party which has filed prior to such date a request for notices with this Court, (c) counsel for the Lender, and (d) counsel for LCP North Clark.

### O. Retention of Jurisdiction

37. The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Dated: April 27, 2016

                                                 _/s/ Jacqueline P. Cox_
                                                 UNITED STATES BANKRUPTCY JUDGE

1976328.2

# EXHIBIT A

| | Feb-16 Actual | Mar-16 Actual | Apr-16 Actual | Apr-16 Budget | May-16 Budget | Jun-16 Budget | Jul-16 Budget | Aug-16 Budget | Sep-16 Budget | Oct-16 Budget |
|---|---|---|---|---|---|---|---|---|---|---|
| **BEGINNING CASH** | 0 | 3,002 | (4,172) | | | | | | | |
| **REVENUE** | | | | | | | | | | |
| **RENTAL REVENUE** | | | | | | | | | | |
| *OFFICE/RETAIL* | | | | | | | | | | |
| 4100-110 BASE RENT OFFICE | | | | | | | | | | |
| 77 W Wacker Drive LLC Air Rights | 3,002 | 9,005 | 3,002 | - | 3,002 | 3,002 | 3,002 | 3,002 | 3,002 | 3,002 |
| TOTAL BASE RENT | 3,002 | 9,005 | 3,002 | - | 3,002 | 3,002 | 3,002 | 3,002 | 3,002 | 3,002 |
| 4100-120 BASE RENT RETAIL | | | | | | | | | | |
| Fazal Development Network (Subway) | - | 1,990 | - | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 |
| TOTAL BASE RENT | - | 1,990 | - | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 |
| *RECOVERY/PASS THRU* | | | | | | | | | | |
| 4415-100 Fazal Development Network CAM | - | - | - | 1,233 | 1,233 | 1,233 | 1,233 | 1,233 | 1,233 | 1,233 |
| 4425-100 Fazal Development Network RE Tax | - | - | - | 463 | 463 | 463 | 463 | 463 | 463 | 463 |
| TOTAL RECOVERY/PASS THRU | - | - | - | 1,697 | 1,697 | 1,697 | 1,697 | 1,697 | 1,697 | 1,697 |
| **TOTAL RENTAL REVENUE** | 3,002 | 10,994 | 3,002 | 4,231 | 7,233 | 7,233 | 7,233 | 7,233 | 7,233 | 7,233 |
| *FINANCING INCOME* | | | | | | | | | | |
| Post Petition Funding | - | - | 109,919 | - | 100,000 | 65,000 | - | - | - | - |
| TOTAL FINANCING INCOME | - | - | 109,919 | - | 100,000 | 65,000 | - | - | - | - |
| **TOTAL REVENUE** | 3,002 | 10,994 | 112,921 | 4,231 | 107,233 | 72,233 | 7,233 | 7,233 | 7,233 | 7,233 |

# EXPENSES

## OPERATING EXPENSES

### Utilities

| | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 | Aug-16 | Sep-16 | Oct-16 |
|---|---|---|---|---|---|---|---|---|---|
| 5140-410 Electricity (Main Building) | - | - | - | 400 | 400 | 400 | 400 | 400 | 400 |
| 5140-420 Gas (Main Building) | - | - | - | 400 | 400 | 400 | 400 | 400 | 400 |
| 5140-430 Water/Sewer (Main Building) | - | - | - | 200 | 200 | 200 | 200 | 200 | 200 |
| 5140-410 Electricity (Subway HVAC Unit incl. depc | - | - | - | 1,000 | 1,000 | 200 | 200 | 200 | 200 |
| 5140-420 Gas (Subway HVAC Unit) | - | - | - | 250 | 250 | 250 | 250 | 250 | 250 |
| TOTAL UTILITIES | - | - | 2,250 | 2,250 | 2,250 | 1,450 | 1,450 | 1,450 | 1,450 |

### Waste Hauling

| | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 | Aug-16 | Sep-16 | Oct-16 |
|---|---|---|---|---|---|---|---|---|---|
| 5110-185 Waste Hauling (Subway) | - | - | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| TOTAL WASTE HAULING | - | - | 200 | 200 | 200 | 200 | 200 | 200 | 200 |

### Repairs and Maintenance

| | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 | Aug-16 | Sep-16 | Oct-16 |
|---|---|---|---|---|---|---|---|---|---|
| 5123-145 RM HVAC Equipment | - | - | 36,895 | - | - | - | - | - | - |
| 5120-305 Dock Door Repair/Key replacements | - | 1,016 | - | 2,000 | 12,000 | - | - | - | - |
| TOTAL REPAIRS AND MAINTENANCE | - | 1,016 | - | 2,000 | 12,000 | - | - | - | - |

### Security

| | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 | Aug-16 | Sep-16 | Oct-16 |
|---|---|---|---|---|---|---|---|---|---|
| 5135-145 Fire Alarm Panel Installation | - | - | 14,644 | 14,836 | - | - | - | - | - |
| 5135-390 Fire Alarm Panel Monitoring | - | - | - | 420 | - | - | - | - | - |
| 5135-390 Telephone Lines (fire panel) | - | - | - | 200 | 200 | 200 | 200 | 200 | 200 |
| 5135-370 Fire/Life-Sprinklers | - | 1,002 | - | - | - | - | - | - | - |
| 5130-100 Fire Guard | - | 12,925 | 7,920 | - | - | - | - | - | - |
| TOTAL SECURITY | - | 13,927 | 22,564 | 15,456 | 200 | 200 | 200 | 200 | 200 |

## ADMINISTRATIVE

### MANAGEMENT FEES

| | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 | Aug-16 | Sep-16 | Oct-16 |
|---|---|---|---|---|---|---|---|---|---|
| 5150-990 Management Fees | - | - | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |

| | Feb-16 | Mar-16 | Apr-16 | Apr-16 | May-16 | Jun-16 | Jul-16 | Aug-16 | Sep-16 | Oct-16 |
|---|---|---|---|---|---|---|---|---|---|---|
| *GENERAL ADMINISTRATIVE* | | | | | | | | | | |
| 5150-595 Accounting Fees | - | - | - | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 |
| 5150-565 Bank Fees | - | 223 | - | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| Post Petition Funding Fee | - | - | - | 10,000 | - | - | - | - | - | - |
| Receivers Fees | - | - | - | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| 5150-320 Legal Fees (Lender) | - | - | - | 17,500 | 10,000 | - | - | - | 5,000 | - |
| 5150-320 Legal Fees | - | - | - | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| TOTAL GENERAL ADMIN | - | 223 | - | 32,950 | 15,450 | 5,450 | 5,450 | 5,450 | 10,450 | 5,450 |
| | | | | | | | | | | |
| *UNPAID INVOICES* | | | | | | | | | | |
| Unpaid Invoices-First Receivers Report | - | - | - | - | 7,561 | - | - | - | - | - |
| Unpaid Invoices-Second Receivers Report | - | - | - | - | 93,209 | - | - | - | - | - |
| Unpaid Invoices-Third Receivers Report (Pending) | - | - | - | - | - | 46,200 | - | - | - | - |
| TOTAL UNPAID INVOICES | - | - | - | - | 100,770 | 46,200 | - | - | - | - |
| | | | | | | | | | | |
| **TOTAL OPERATING EXPENSE** | 3,002 | 15,166 | 22,564 | 38,400 | 139,126 | 69,300 | 10,300 | 10,300 | 15,300 | 10,300 |
| | | | | | | | | | | |
| **NET OPERATING INCOME** | 3,002 | (4,172) | 90,356 | (34,169) | (31,893) | 2,933 | (3,067) | (3,067) | (8,067) | (3,067) |
| | | | | | | | | | | |
| **ENDING CASH** | 3,002 | (4,172) | 90,356 | 56,187 | 24,294 | 27,227 | 24,159 | 21,092 | 13,024 | 9,957 |